IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DEBRA L. HALL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:16CV432 |
| | ) |
| NANCY BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Debra L. Hall ("Hall") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Hall alleges that the Administrative Law Judge ("ALJ") erred by failing to give proper weight to the opinions of certain medical providers, who concurred that Hall requires a cane to walk. Hall also argues that the ALJ failed to address the vocational expert's conclusion that if an employee needs a cane to do peripheral aspects of a job, then that will preclude all substantial gainful employment. I find that the ALJ failed to adequately address how the vocational expert's testimony regarding the peripheral aspects of the jobs impacts Hall's ability to obtain substantial gainful employment. Accordingly, I **RECOMMEND GRANTING** Hall's Motion for Summary Judgment (Dkt. No. 13) and **DENYING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 14).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Hall failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Hall filed for DIB on September 2, 2010, claiming that her disability began on November 7, 2009, due to a back injury, broken tailbone, fibromyalgia, use of TENS unit, depression, migraine headaches, temporomandibular joint disorder, degenerative disc disease, and degenerative bone disease.[2] R. 406, 441. At the March 2015 hearing before the ALJ, Hall sought to amend the alleged onset date to April 15, 2013.[3] R. 15, 109–10. However, it is unclear whether the amendment was granted; the ALJ never explicitly denied the request, but the ALJ's opinion references the original alleged onset date of November 7, 2009.[4] R. 15, 17. Hall's

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Hall was born on July 31, 1967 and was 42 years old on her alleged onset date, making her a "younger person" under the Act. R. 127.

[3] Hall's date last insured was December 31, 2014; thus she must show that her disability began on or before December 31, 2014 and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[4] While an ALJ may deny a claimant's request to amend the onset date where such a denial is supported by the medical record, the ALJ here should have more clearly dealt with the request to amend. See Lewis v. Apfel, 236 F.3d 503, 510 (9th Cir. 2001); Mason v. Soc. Sec. Admin., No. CV SAG-14-3362, 2016 WL 225689, at n. 1 (D. Md. Jan. 19, 2016).

2

counsel made clear during oral argument before me that she intends an onset date of April 15, 2013. The state agency denied Hall's application at the initial and reconsideration levels of administrative review. R. 127–37, 139–50.

Hall's DIB claim has a somewhat lengthy history, as ALJ, Robert S. Habermann, held multiple hearings. The first hearing occurred on October 10, 2012, after which the ALJ held the record open for the submission of a post-hearing psychological consultative examination and interrogatories by an independent medical expert. R. 39–53. Following receipt of this additional evidence, Hall requested a supplemental hearing, which took place on May 8, 2013. R. 535–36, 538–39, 54–89. On May 20, 2013, the ALJ entered a decision finding that Hall was not disabled under the Act. R. 155-66. The Appeals Council vacated the decision and remanded the case to the ALJ, instructing him to provide a more complete explanation of Hall's residual functional capacity ("RFC"). The Appeals Council directed the ALJ to provide reasons and citations to the record to support Hall's assessed limitations and to obtain additional evidence from a vocational expert. R. 174-75. On October 22, 2014, the ALJ held another hearing, after which he held the record open for medical interrogatories by independent medical expert Leonard M. Rubin, M.D., which Dr. Rubin completed on October 4, 2014. R. 90–104, 1333–41. Following receipt of Dr. Rubin's medical interrogatories, Hall objected to Dr. Rubin's proposed RFC and requested a supplemental hearing. R. 559–60. The ALJ held a supplemental hearing on March 31, 2015, which included testimony from vocational expert Berry Hensley. R. 105–26.

On April 2, 2015, the ALJ entered his decision analyzing Hall's claims under the familiar five-step process[5] and denying her claim for benefits. R. 15–30. The ALJ found that

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520);

3

Hall was insured at the time of the alleged disability onset and that she suffered from the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy, headaches, myalgias and myosites unspecified, pain disorder, fibromyalgia, and depressive disorder. R. 17. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18. The ALJ concluded that Hall retained the RFC to perform a limited range of light work. R. 20.[6] Specifically, the ALJ found that Hall could lift up to 10 pounds frequently and 20 pounds occasionally, sit for six hours, stand for three hours, and walk for two hours in an eight-hour workday. Id. Hall can frequently reach, handle, finger, push, pull, and feel, and can occasionally kneel, crawl, crouch, stoop, balance, climb ramps, stairs, ladders, ropes, and scaffolds, and operate foot controls. Hall can have occasional exposure to unprotected heights, moving parts, and operating a motor vehicle, and frequent exposure to humidity, wetness, dusts, odors, fumes, pulmonary irritants, extreme cold and heat, and vibration. The ALJ also found that Hall can perform semiskilled work and can walk up to 20 feet without the use of a cane. Id.

The ALJ determined that Hall was not capable of performing her past relevant work as a cosmetologist, but that she could perform jobs that exist in significant numbers in the national economy, such as order clerk, telemarketer, and material handler. R. 29–30. Thus, the ALJ concluded that Hall was not disabled. R. 30. Hall appealed the ALJ's decision and the Appeals Council denied her request for review on July 13, 2016. R. 1–3.

---

Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] Though Hall was found capable of a limited range of light work, the actual jobs testified to by the vocational expert - order clerk, telemarketer, and material handler - are sedentary. R. 30.

## ANALYSIS

Hall alleges that the ALJ erred by (1) failing to give proper weight to the opinions of medical providers who concurred that Hall requires a cane; and (2) failing to include the use of a cane in the RFC. Specifically, Hall asserts that Jennifer Richardson, PA-C, Sung-Joon Cho, M.D., and Paul Gannon, M.D. found that Hall needed a cane, and she points to multiple instances in the record reporting falls. Further, Hall argues that the ALJ failed to address the vocational expert's testimony that if an employee needs a cane to do "peripheral aspects" of the job, then in his professional experience, "that alone will preclude all substantial gainful employment." Pl.'s Br. at 8, Dkt. No. 13. The Commissioner argues that Hall has not shown that a cane was a medically required device, and has also not shown that she required a cane both to stand (i.e. for balance) and to ambulate.

### A. Medical History and Opinions

Hall's medical history includes treatment for degenerative disc disease, headaches, myalgias, and a pain disorder. She consistently complained of neck, leg, and lower back pain, walked with a mildly antalgic gate, and generally had mild abnormalities on physical exam. Because Hall's argument revolves around the ALJ's findings regarding Hall's cane usage, I focus on the medical record pertinent to whether Hall required a cane.

Dr. Chapman, Hall's treating physician, noted in a Medical Source Statement in October 2012 that Hall could sit for less than two hours and "possibly" stand two to four hours in an eight-hour day, and that she would "probably" need to take three to four unscheduled breaks of at least 15 minutes during the workday. R. 919. The ALJ gave Dr. Chapman's opinion little weight, stating it was "conclusory and not supported by the objective medical evidence, which

5

shows only mild degenerative disc disease and only occasional antalgic gait." R. 25. The ALJ also wrote that Hall "often had a normal gait at her appointments." Id. However, there is ample support in the record that Hall had an antalgic gait, as well as low back pain and leg pain and weakness. R. 783, 1101, 1119–20, 1139, 1140-42, 1241, 1331, 1359.

Dr. Cho examined Hall and completed a Medical Consultant Report in April 2012. R. 781–92. On examination, Dr. Cho indicated that Hall walks with a slightly stiff, slightly antalgic gait. R. 783. Dr. Cho noted that Hall suffered from "some impaired balance" and reported using the cane for balance, writing "claimant uses a cane for subjective balance, which is reasonable." R. 784, 788, 790. Noting only that Hall "had normal motor strength and only slightly anatalgic gait," the ALJ gave Dr. Cho's opinion "some weight." R. 25.

In March 2012, the ALJ requested Dr. Paul Gannon to provide a written medical opinion whether Hall meets or equals a physical listing. R. 765. Dr. Gannon completed a Medical Source Statement of Ability to do Work-Related Activities (Physical), and Medical Interrogatories in April 2012. R. 766–74. Dr. Gannon found that a cane was medically necessary and indicated that he was "not able to find adequate evidence of RFC, except for claimant's own testimony." R. 767, 772. The ALJ gave Dr. Gannon's opinion little weight because "the opinion of Dr. Cooke is more consistent with the entire record" which shows "only mild to moderate objective abnormalities on physical examination and imaging, such as mild degenerative disc disease." R. 26.

Charles Cooke, M.D., completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) in November 2012. R. 902–17. Dr. Cooke found Hall capable of sitting for six hours, standing for five hours, and walking for four hours in an eight-hour day. R. 903. He further indicated that Hall uses a cane, but that it "was apparently self prescribed" and

6

found that a cane was not medically necessary for either ambulation or balance R. 903, 918. The ALJ gave Dr. Cooke's opinion "some weight" because it was "supported by the evidence he reviewed", but did not give the opinion "great weight" because Dr. Cooke had reviewed only the evidence prior to November 2012. Id.

Leonard M. Rubin, M.D., and independent medical expert, completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) and Medical Interrogatories in October 2014. R. 1333–41. Dr. Rubin found that Hall could stand for three hours and walk for two hours without interruption, and did not require the use of a cane to ambulate. R. 1337. Dr. Rubin noted in his answers to medical interrogatories that Hall complained of low back pain and "probably should not have to stoop, crawl, or crouch." Dr. Rubin completed a Medical Source Statement the same day, but contradicted his interrogatory answer and indicated that Hall could occasionally crouch, crawl, and stoop.[7] Compare R. 1335 with R. 1339. The ALJ gave Dr. Rubin's opinion great weight, noting that "the overall medical evidence of record supports his opinion because it shows only mild to moderate objective abnormalities on physical examination and imaging." R. 26.

PA Richardson completed a medical source statement in October 2014 indicating that it is medically necessary for Hall to ambulate with a cane, and to stand with a cane due to gait and balance problems. R. 1331. PA Richardson wrote that Hall could walk only 15–20 feet without using a cane. Id. The Commissioner points out that PA Richardson saw Hall 13 times between 2011 and 2015, but only recorded observing Hall using a cane in January 2014 (R. 1139), July 2014 (R. 1241), and October 2014 (R. 1359). These observations are not inconsistent with the record which shows that Hall's leg issues and balance problems worsened in 2013 and 2014.

---

[7] The ALJ did not address the discrepancy between Dr. Rubin's opinions regarding whether Hall could crouch, crawl, or stoop, instead stating only that Dr. Rubin found that Hall can occasionally, crouch, crawl, and stoop. None of the jobs listed by the vocational expert required crouching, crawling, or stooping.

7

This is also consistent with Hall's request to amend the alleged onset date of her disability to April 15, 2013, citing evidence in February 2013, that Hall's right lower extremity pain and weakness was worsening (R. 924), as well as reported falls in April and July 2013 (R. 1077, 1084–85, 1100), and January 2014 (R. 1140) . R. 15, 108–10.

### B. RFC and Cane Usage

Hall argues that the medical evidence, including medical expert Dr. Gannon, examining physician Dr. Cho, and treating physician's assistant Richardson concluded that Hall required a cane. Hall asserts that, "Not only did the ALJ not include cane usage in his RFC, but he did not acknowledge . . . PA Richardson's medical opinion [that Hall] requires cane usage for walking more than 15 to 20 feet." Pl.'s Br. at 6, Dkt. No. 13. However, the ALJ did address Hall's need for a cane in the RFC, stating that Hall "can walk up to [20] feet without the use of a cane." R. 20. The ALJ further addressed this issue in the credibility portion of his opinion, writing:

> [Hall] testified she needed a cane for any walking, and [PA] Richardson's opinion echoed this. However, [Hall] often had a normal or only slightly antalgic tait. The extensive medical evidence of record shows that she used a cane only a few times at appointments, likely when she had an exacerbation of her symptoms.

R. 28. Thus, despite his suggestion that Hall's claim that she needed a cane for walking was less than entirely credible, the ALJ still included a limitation in the RFC that Hall could walk only up to 20 feet without a cane. Hall testified at the October 2014 hearing that she used her cane for stability and that she fell, on average, twice a month.

The vocational expert testified that if an employee "needs a cane to walk to the bathroom at work . . . than that alone will preclude all substantial gainful employment" in his professional experience. Pl.'s Br. at 8, Dkt. No. 13.  At the March 2015 hearing, the ALJ asked the vocational expert, "It says she can walk without a cane for 15 and 20 feet. Forget the balance part of it; would that also preclude sedentary jobs?" The vocational expert responded, "In my opinion it

8

does because you have to walk further than 15 to 20 feet normally to get to the work station." R. 120. Thus, while the vocational expert testified that use of a cane for distances further than 15 to 20 feet would not interfere with the actual *performance* of the sedentary jobs, he clearly stated that it would interfere with peripheral aspects. Id.

> The ALJ questioned the vocational expert again:
>
> ALJ: Okay then – just let me just quite understand again, hypothetical number two, which is the sedentary jobs, the order clerk, the telemarketer and the [material handler] packer, your testimony is that if she can walk 15 to 20 feet without a cane as far as the walking part of it, she could do those jobs?
>
> VE: That's correct.
>
> ALJ: Okay.
>
> VE: *The walking part of it.*[emphasis added]
>
> ALJ: Okay, now for these jobs – in the actual performance of the job . . . do these jobs require any significant balancing?
>
> VE: No, they're all sedentary jobs. It['s the] peripheral aspect of the work that I testified to.
>
> ALJ: Okay, so if she went to see a supervisor where she –
>
> VE: Went to the bathroom.
>
> ALJ: Okay, she would need a cane at that point?
>
> VE: That's correct.

R. 122–23. Thus, I am left confused regarding whether Hall is precluded from gainful employment because she would be unable to complete the "peripheral aspect" of the work for the sedentary jobs listed - order clerk, telemarketer, and material handler. The ALJ failed to address in his opinion the vocational expert's testimony that there would be no jobs available if a cane was required for distances greater than 20 feet because of the peripheral activities, such as going to the bathroom, lunch breaks, or into supervisor's office for discussion. R. 121. The vocational

9

expert even clarified, "If the person needs a cane to balance at work, the person is vulnerable to falls. Most competitive people . . . won't employ a person who is subject to falling at work."[8] R. 122–23. In short, the ALJ's RFC, specifically that Hall can walk up to 20 feet without the use of a cane, is not consistent with the vocational expert's testimony that if you need to use a cane when you walk more than 15 to 20 feet, even sedentary jobs are precluded because of the peripheral activities required. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (holding that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'") (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Because I find that remand is warranted based on the confusion in the vocational expert's hearing testimony, not adequately explained in the ALJ's opinion, Hall's additional allegations of error will not be addressed in this opinion. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Hall's remaining allegations of error.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14), **GRANTING** Hall's motion for summary judgment (Dkt. No. 13), and **REVERSING** and **REMANDING** this case to the Commissioner under sentence four of 42 USC § 405(g).

The Clerk is directed to transmit the record in this case Michael F. Urbanski, United

---

[8] Hall also testified at the October 2014 hearing that she has fallen, on occasion, even while using her cane. R. 102.

10

States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered:  January 24, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge